UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES J. DOODY, III et al.,      :
                                 :
        Plaintiffs,              :
                                 :
v.                               :   Case No. 3:19-cv-1191 (RNC)
                                 :
SETERUS, INC.,                   :
                                 :
        Defendant.               :

RULING AND ORDER

Plaintiff James Doody brings this action for alleged unlawful conduct relating to enforcement of a mortgage on his home, including in connection with foreclosure proceedings in Connecticut Superior Court.  Fourteen counts remain pending against Seterus, Inc. ("Seterus").  Seterus has moved to dismiss all counts.  For the reasons that follow, the motion is granted in part and denied in part.

I.   Background

Plaintiff James J. Doody, III refinanced the mortgage on his home in Branford in July 2013.  ECF No. 1 ¶ 5.  Former defendant Bank of America, N.A. ("BANA") assigned the mortgage to the Federal National Mortgage Association ("FNMA"), but continued to service the mortgage until around September 2015, at which time defendant Seterus took over servicing from BANA. Id. ¶ 9.

From December 2013 through June 2014, plaintiff failed to

1

make the $969.30 monthly payments on the mortgage.  Id. ¶ 5-6.
In July 2014, plaintiff resumed making monthly payments of
$939.30.  In September 2014, BANA initiated a foreclosure action
in the Superior Court for the Judicial District of New Haven
claiming that plaintiff was in default because his renewed
monthly payments failed to cover the seven-month arrearage.
Fed. Nat'l Mortg. v. Doody, No. CV146049727, 2018 WL 3511216, at
*1 (Conn. Super. Ct. June 29, 2018).

Beginning in January 2015, plaintiff paid an increased
monthly amount of $1,542.77 to cure the arrearage.  Id.  In June
2015, before the arrearage was cured, plaintiff resumed paying
the original amount of $969.30.  Id.  Seterus apparently
accepted, or at least did not return, any of these payments
until January 2016, at which time it began rejecting them.

The foreclosure action subsequently went to trial.  In
2018, the Superior Court entered judgment in favor of Mr. Doody,
finding that FNMA (which at that point owned the mortgage)
failed to prove by a preponderance of the evidence that the
mortgage was in default.  Id. at *2.

Plaintiff alleges that the defendants intentionally failed
to apply any of the mortgage payments he made from July 2014
through December 2016, ECF No. 1 ¶¶ 10-11; and that this led
them to repeatedly mischaracterize the outstanding balance.  Id.
¶ 12.  He also alleges that the defendants have inaccurately

2

notified credit reporting agencies that no payments have been made since July 2014, resulting in a "serious delinquency." Id. ¶ 13.  Plaintiff further alleges that, despite the judgment in the foreclosure action, defendants continue to send him inaccurate mortgage statements and continue to report to credit agencies that he is in default.  Id. ¶¶ 17-20.

II.   Legal Standard

Under Rule 12(b)(6), a complaint is properly dismissed when it fails to state a claim upon which relief may be granted.  To withstand a properly supported motion to dismiss, a complaint must present a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plausibility standard requires a plaintiff to provide factual allegations permitting a reasonable inference that the defendant is liable for the alleged wrong.

III.  Discussion

Plaintiff's remaining claims against Seterus are counts 3 (Breach of Contract), 6 (Breach of Implied Duty of Good Faith and Fair Dealing), 9 (Promissory Estoppel), 12 (Negligent Misrepresentation), 18 (Violation of CUTPA), 21 (Violation of FDCPA), 24 (Violation of CCPA), 27 (Negligent Infliction of Emotional Distress), 30 (Intentional Infliction of Emotional Distress), 33 (Abuse of Process), 36 (Vexatious Litigation), 42 (Defamation of Character), 45 (False Light), and 48 (Trespass).

Seterus moves to dismiss on a host of theories.  First, Seterus
argues that most counts should be dismissed because they are
time-barred.  Next, it argues that all counts, except for 33 and
36, should be dismissed on res judicata grounds.  Seterus also
argues that plaintiff fails to state a claim as to counts 18,
21, 24, 27, 30, 33, 36, 45, and 48.  Then Seterus argues that
the Noerr-Pennington and economic loss doctrines bar recovery,
the Court lacks jurisdiction to hear the defamation claims, and
plaintiff's claims are preempted by the Fair Credit Reporting
Act, 15 U.S.C. § 1681 et seq. ("FCRA") insofar as they relate to
credit reporting.

Preemption

Seterus argues that the FCRA preempts plaintiff's claims
for injuries arising from its submission of credit reports.  ECF
No. 59-1 at 21-22.  Plaintiff responds that "[t]he plaintiffs
are not suing under [FCRA]" but are "simply raising the false
reporting as damage . . . ."  ECF No. 72 at 22.  Plaintiff seems
to misunderstand preemption.  Whether plaintiff is suing under
the FCRA is irrelevant to whether his claims are preempted.  See
Galper v. JP Morgan Chase Bank, N.A., 802 F.3d 437, 449 (2d Cir.
2015) (holding that FCRA "preempts any recovery for damages
based on allegations of erroneous or otherwise improper
furnishing -- regardless of the particular statute or common law
theory that plaintiff utilizes to advance her claim.").  FCRA

4

preempts claims "relating to the responsibilities of persons who furnish information to consumer reporting agencies."  15 U.S.C. § 1681t(b)(1)(F).

To the extent plaintiff seeks relief based on Seterus's reporting of allegedly inaccurate information to consumer credit reporting agencies, his claims relate "to the responsibilities of persons who furnish information to consumer reporting agencies," and are therefore preempted by the FCRA.  See, e.g., Macpherson v. JPMorgan Chase Bank, N.A., 665 F.3d 45, 46-48 (2d Cir. 2011) (FCRA preempts tort claims alleging conduct regulated by FCRA); Sprague v. Salisbury Bank & Tr. Co., No. 3:18-CV-001487 (VLB), 2019 WL 4246601, at *7-10 (D. Conn. Sept. 5, 2019), aff'd, 969 F.3d 95 (2d Cir. 2020) (dismissing state law claims as "plainly preempted by the FCRA because they solely involve the 'responsibilities under Section 1681s-2 of persons who furnish information to consumer reporting agencies'").

<u>Counts 3, 6, and 9 – Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Promissory Estoppel</u>

Seterus argues that the claims in counts 3, 6 and 9 are barred by res judicata, which prevents a litigant from pursuing claims that could have been decided on the merits in an earlier action against the same party or its privies.  See Corey v. Avco-Lycoming Div., Avco Corp., 163 Conn. 309, 317, 307 A.2d 155 (1972).  I previously dismissed these same claims as to

defendant BANA because they could have been, but were not, raised as counterclaims in the state foreclosure action.  <u>See</u> ECF No. 95.  Accordingly, these counts are dismissed.

<u>Count 12 - Negligent Misrepresentation</u>

In count 12, plaintiff alleges that Seterus negligently misrepresented facts relating to a promise it made to him, apparently with respect to the alleged mortgage modification or forbearance plan.  Seterus argues that this claim is also barred by res judicata.  I agree.  Counterclaims alleging negligent misrepresentation are routinely permitted in mortgage foreclosure actions in Connecticut.  <u>See, e.g.</u>, <u>Sovereign Bank v. Licata</u>, 116 Conn. App. 483, 505, 977 A.2d 228, 244 (2009) (affirming jury's verdict for defendant who brought negligent misrepresentation counterclaim in foreclosure action connected to an alleged mortgage modification agreement); <u>Merrill Lynch Mortg. Cap. v. Vierra</u>, No. CV076000653S, 2007 WL 1321836, at *3 (Conn. Super. Ct. Apr. 19, 2007) (denying motion to strike negligent misrepresentation counterclaim and finding that defendant in mortgage foreclosure action adequately pleaded defenses sounding in misrepresentation); <u>U.S. Bank, Nat'l Ass'n v. Russo</u>, No. UWYCV146025743S, 2016 WL 6499074, at *4 (Conn. Super. Ct. Oct. 6, 2016) ("[N]egligent misrepresentation may be considered as a counterclaim if properly pleaded and shown to relate to the mortgage transaction."); <u>U.S. Bank, Nat'l Ass'n v.</u>

6

Kosciusko, No. LLICV136008646S, 2016 WL 8488878, at *6 (Conn.
Super. Ct. Nov. 8, 2016) (denying motion to strike negligent
misrepresentation defense in connection with an alleged mortgage
modification agreement in foreclosure action because the defense
relates to "the making, validity or enforcement of the note or
mortgage").  Because count 12 could have been, but was not,
raised in the earlier action, it is dismissed.

Count 18 – Violation of CUTPA

Plaintiff alleges that Seterus has engaged in unfair or
deceptive acts or practices in violation of CUTPA, Conn. Gen.
Stat. § 42-110b(a), in that "[o]n at least one occasion, since
2013 until now, in the process of servicing the Plaintiff's
loan, [it] misrepresented the facts to the Plaintiff."  ECF No.
1 ¶ 35.  Plaintiff also alleges that Seterus "misled their
clients" on at least one other occasion, id. ¶ 36, entered into
contracts "for the purpose of misleading them," id. ¶ 37,
misrepresented its intentions to plaintiff, id. ¶ 39, and
engaged in a "bait and switch in which it stole, converted, and
was otherwise deceptive and unethical," id. ¶ 41.

As just discussed, res judicata bars claims that could have
been, but were not, raised in an earlier action.  However, it
does not necessarily apply to claims that arise after judgment
was entered in the earlier action, even if those claims relate
to the same subject matter.  See Restatement (Second) of

Judgments § 24, Comment f (1980) ("Material operative facts
occurring after the decision of an action with respect to the
same subject matter may in themselves, or taken in conjunction
with the antecedent facts, comprise a transaction which may be
made the basis of a second action not precluded by the
first . . . ."); Cadle Co. v. Gabel, 69 Conn. App. 279, 298, 794
A.2d 1029, 1042 (2002) (citing the Restatement, finding that
"the entire scheme of which [plaintiff] complains was not
accomplished until after the foreclosure action was over," and
holding that res judicata did not bar claim because "to conclude
that its claim is now barred by res judicata would be to require
omniscience in litigation").

Here, plaintiff's CUTPA claim appears to based primarily on
the making of the mortgage and the workout or modification plan
allegedly entered into after plaintiff resumed his monthly
payments.  To the extent the claim arises from conduct that
occurred prior to entry of the judgment in the state foreclosure
action, it is barred.  See Bank of Am., N.A. v. Criscitelli, No.
CV136038369S, 2015 WL 5806294, at *4 (Conn. Super. Ct. Aug. 31,
2015) (denying BANA's motion to strike CUTPA counterclaim and
finding it met transaction test in mortgage foreclosure action
where oral modification agreement alleged); Merrill Lynch Mortg.
Cap. v. Vierra, No. CV076000653S, 2007 WL 1321836, at *4 (Conn.

Super. Ct. Apr. 19, 2007) (denying motion to strike CUTPA counterclaim in mortgage foreclosure action).

However, plaintiff alleges that Seterus continued to misrepresent facts after entry of the judgment.  <u>See</u> ECF No. 1 ¶ 35 (alleging that conduct has continued "since 2013 until now").  Though the allegations are not entirely clear, plaintiff appears to be alleging that Seterus has continued to send him mortgage statements containing false statements as to the total amount of debt outstanding on the mortgage.  <u>See, e.g.</u>, <u>id.</u> ¶ 29 (alleging that, from September 2014 "to the present . . . the Defendants continue to send false mortgage statements to the Plaintiffs").  Even though this claim could have been raised in the earlier action because Seterus began sending allegedly incorrect mortgage statements as far back as 2014, plaintiff's failure to raise the claim there is not dispositive since he alleges that the conduct has continued.  "[I]n cases of continuing or recurrent wrong[s], a plaintiff may commence an action from time to time for the damages incurred to the date of [that action] without running afoul of res judicata's prohibition against seeking additional damages after the original action."  <u>Wellswood Columbia, LLC v. Town of Hebron</u>, 327 Conn. 53, 76, 171 A.3d 409, 425 (2017) (quoting Restatement (Second) of Judgments § 26(1)(e) (internal quotation marks omitted)).  <u>See also</u> <u>Storey v. Cello Holdings, L.L.C.</u>, 347 F.3d

370, 383–86 (2d Cir. 2003) ("Claims arising subsequent to a prior action need not, and often perhaps could not, have been brought in that prior action; accordingly, they are not barred by res judicata regardless of whether they are premised on facts representing a continuance of the same 'course of conduct.'"). Therefore, to the extent the CUTPA claim is based on conduct that occurred subsequent to entry of judgment in the foreclosure action, it is not barred by res judicata.

Seterus also argues that, wholly apart from res judicata, the CUTPA claim fails to state a claim on which relief can be granted because the allegations are conclusory and not directed at Seterus, plaintiff has failed to plead an ascertainable loss, and the claim is preempted by FCRA insofar as it relates to credit reporting.  I agree that the CUTPA claim is preempted insofar as it is based on credit reporting.  However, I think the allegations concerning Seterus's submission of false statements to plaintiff are sufficient to state a claim for relief.

To prevail on his CUTPA claim, plaintiff must plead and prove that the defendant engaged in "unfair or deceptive acts or practices in the conduct of any trade or commerce" and that as a result of the act or practice, plaintiff suffered an "ascertainable loss of money or property."  D'Angelo Dev. & Const. Corp. v. Cordovano, 121 Conn. App. 165, 181, 995 A.2d 79,

10

89 (2010) (quoting Neighborhood Builders v. Madison, 294 Conn.
651, 657, 986 A.2d 278 (2010) (internal quotation marks
omitted)).  The ascertainable loss requirement is a "threshold
barrier which limits the class of persons who may bring a CUTPA
action seeking either actual damages or equitable relief."
Artie's Auto Body, Inc. v. Hartford Fire Ins. Co., 287 Conn.
208, 217-18, 947 A.2d 320, 329-30 (2008).  The requirement,
though, is a flexible one.  A plaintiff need not "prove a
specific amount of actual damages in order to make out a prima
facie case."  Hinchliffe v. Am. Motors Corp., 184 Conn. 607,
613, 440 A.2d 810, 813-14 (1981).  Nor must he plead substantial
damages.  Rather, under CUTPA, "the private loss indeed may be
so small that the common law likely would reject it as grounds
for relief, yet it will support an action under the statute."
Madonna v. Acad. Collection Serv., Inc., No. 3:95CV00875 (AVC),
1997 WL 530101, at *11 (D. Conn. Aug. 12, 1997).  Other courts
within this district have found that plaintiffs adequately
alleged CUTPA violations where they claimed losses in the form
of professional fees, attorney's fees, postage, copying, and
other miscellaneous expenses.  See Tanasi v. CitiMortgage, Inc.,
257 F. Supp. 3d 232, 276-77 (D. Conn. 2017).

Here, plaintiff alleges that Seterus, in the process of
servicing his loan, misrepresented facts and misled him, and
that "[a]s a direct and proximate result of the actions of the

Defendant, [he] sustained loss of money, time and emotional distress." ECF No. 1 ¶ 43. Construing these allegations in a light most favorable to plaintiff, they are sufficient to plead a CUTPA violation under the flexible standard adopted by Connecticut courts.

### Counts 21 and 24 – Violations of the FDCPA and CCPA

Plaintiff alleges that Seterus has violated the Fair Debt Collection Practices Act ("FDCPA") and Connecticut's version of the statute, the Creditors' Collection Practices Act Conn. Gen. Stat. §§ 36a-645 et seq. ("CCPA"),[1] by making "false, deceptive and/or misleading representations" in connection with its efforts to collect a debt. ECF No. 1 ¶ 38a. Seterus argues that these claims are also barred by res judicata. ECF No. 59-1 at 12-13. Connecticut courts generally permit FDCPA and CCPA counterclaims in foreclosure actions. See, e.g., Osagie v. U.S. Equities Corp., No. 3:16-CV-01311 (VAB), 2017 WL 3668590, at *10 (D. Conn. Aug. 24, 2017) (collecting cases and holding that FDCPA claim was barred by res judicata because plaintiff could have raised it in state court foreclosure action). Accordingly,

---

[1] Because "the CCPA's terms are substantially parallel to the FDCPA," Vallecastro v. Tobin, Melien & Marohn, No. 313-CV-1441SRU, 2014 WL 7185513, at *5 (D. Conn. Dec. 16, 2014), and because "courts often consider and cite as persuasive authority cases decided under the [FDCPA] because the CCPA parallels the FDCPA," Claude v. Wells Fargo Home Mortg., No. 3:13-CV-00535 VLB, 2014 WL 4073215, at *7 n.5 (D. Conn. Aug. 14, 2014), I consider plaintiff's claims together.

for plaintiff's claims to survive, they must be based on conduct that occurred after the entry of judgment in the state court action.

Seterus asserts that the allegedly wrongful acts all "took place prior to or during the Foreclosure Action." ECF No. 59-1 at 13. But the amended complaint alleges that the conduct has continued "every month since the commencement of the foreclosure in September 2014 to the present." ECF No. 1 ¶¶ 17-20. Specifically, plaintiff alleges that Seterus's mortgage statements, which contain incorrect mortgage calculations and which it sends to plaintiff on a monthly basis, violate the FDCPA and CCPA. Id. ¶ 38f. Successive mailing of letters mischaracterizing debt obligations can give rise to independent FDCPA violations each time a letter is sent. See, e.g., Goins v. JBC & Assocs., P.C., 352 F. Supp. 2d 262, 266-67 (D. Conn. 2005) (FDCPA claim arising from defendant's allegedly erroneous letter seeking to collect on plaintiff's debt sent after entry of judgment in prior actions was not barred by res judicata since "[e]ven if the letter were part of the same debt collection activity that defendants had been engaged in and which was the subject of plaintiff's prior suits, the . . . letter constitutes a separate event which may violate the FDCPA independently of prior communications from defendants"); Ellis v. Gen. Revenue Corp., 274 F.R.D. 53, 57-58 (D. Conn. 2011)

(plaintiff's FDCPA claims not time-barred because "[e]ach letter was a new, discrete misrepresentation"); Ghawi v. Law Offices Howard Lee Schiff, P.C., No. 3:13-CV-115 (JBA), 2015 WL 6958010, at *3 (D. Conn. Nov. 10, 2015); Schuh v. Druckman & Sinel, L.L.P., 602 F. Supp. 2d 454, 466-68 (S.D.N.Y. 2009) ("[T]he November 29 letter was sent almost two years after the state court's judgment. . . . Plainly, any FDCPA claim based on the November 29 letter could not have been brought in the original action since the letter was not sent until after the judgment was entered."). Accordingly, to the extent plaintiff's claim under the FDCPA and CCPA is based on allegedly false mortgage statements transmitted by Seterus after entry of the state court judgment, it is not barred by res judicata.

Seterus next argues that the claims in counts 21 and 24 are time-barred because a "continuing violation theory [is] not available under FDCPA." ECF No. 59-1 at 17. The continuing violation doctrine is an exception to the typical "knew-or-should-have-known accrual date" in statutes of limitations. Harris v. City of New York, 186 F.3d 243, 248 (2d Cir. 1999). It enables a plaintiff to seek relief for otherwise time-barred conduct that occurred over a period of time but in fact constituted "one unlawful . . . practice." Washington v. Cnty. of Rockland, 373 F.3d 310, 318 (2d Cir. 2004) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 111 (2002)). The

doctrine does not apply to discrete unlawful acts, such as the transmission of a false mortgage statement, even when those acts are part of serial violations.  Id.

Seterus also moves to dismiss these counts for failure to state a claim on which may be granted.  It is unnecessary to address Seterus's arguments in this regard except insofar as they relate to plaintiff's allegations concerning Seterus's post-judgment mortgage statements, which are the only allegations that can support a viable claim at this point.  As to those allegations, the primary issue is whether the plausibility standard is satisfied.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007).  I find that it is.

The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1962e, including any false representation of the character, amount, or legal status of any debt, id. § 1692e(2)(A).  The Second Circuit has interpreted Section 1692e as proscribing "even a partial misstatement of a consumer's debt obligation."  Vangorden v. Second Round, L.P., 897 F.3d 433, 442 (2d Cir. 2018).  Similarly, Section 36a-646 of the CCPA provides: "No creditor shall use any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt."  Conn. Gen. Stat. § 36a-646.

While the amended complaint is not a model of clarity,
count 21 incorporates by reference the allegations in count 19,
which include the allegation that Seterus continued to provide
plaintiff with erroneous mortgage statements and mortgage
payment amounts even after entry of the judgment in the state
foreclosure action.  ECF No. 1 ¶ 38.  More is not required at
this juncture.

Seterus contends that communications to consumers who are
represented by counsel cannot give rise to FDCPA violations.
ECF No. 59-1 at 17-18.  For support, it cites cases involving
communications to lawyers.  See Kropelnicki v. Siegel, 290 F.3d
118, 130 (2d Cir. 2002) (noting in dicta that plaintiff "has no
standing to claim that the contents of the letter violated the
FDCPA" because "[e]ven if the letter contained language that was
threatening or misleading, it was not threatening or misleading
as to [plaintiff] because it was not addressed to her"); Boyd v.
J.E. Robert Co., No. 05-CV-2455 (KAM) (RER), 2010 U.S. Dist.
LEXIS 140905, at *41 (E.D.N.Y. Mar. 31, 2010) (relying on the
Court's reasoning in Kropelnicki to find that communications
from defendant to plaintiff's attorney did not give rise to
FDCPA claim); Walsh v. Law Offices of Howard Lee Schiff, P.C.,
No. 3:11-cv-1111 (SRU), 2012 U.S. Dist. LEXIS 136408, at *23 (D.
Conn. Sep. 24, 2012) ("[A]ll of the alleged false statements
that were directed solely to [plaintiff's] attorney, rather than

16

to [plaintiff] herself, fall outside the strictures of section
1692e."). These cases do not stand for the broader proposition
that letters to a plaintiff who is represented by counsel cannot
give rise to FDCPA violations.

Count 27 – Negligent Infliction of Emotional Distress

Plaintiff alleges that Seterus caused him emotional harm
when "it foreclosed on the Plaintiff and continues to send
erroneous mortgage statements as of today when it knew and knows
that the Plaintiff was not and is not in default." ECF No. 1
¶ 41. Seterus contends that this claim is barred by res
judicata. Connecticut courts have permitted emotional distress
counterclaims in foreclosure actions. See, e.g., Woodcrest
Condo. Assn. v. Ruby, No. CV106004962S, 2012 WL 432558, at *6
(Conn. Super. Ct. Jan. 19, 2012) (finding that a foreclosure
defendant's negligent infliction of emotional distress
counterclaim meets the transaction test and that "a substantial
duplication of effort would result if these claims were tried
separately"); CitiMortgage, Inc. v. Rey, 150 Conn. App. 595,
610, 92 A.3d 278, 287 (2014) (holding that trial court in a
foreclosure action incorrectly struck the defendant's
counterclaim alleging in part emotional distress because,
"contrary to the court's conclusion, it squarely meets the
transaction test"). Thus, like plaintiff's other claims, the
emotional distress claim is barred except insofar as it is based

17

on conduct occurring after entry of the state court judgment.
As discussed above, the amended complaint alleges that Seterus's
practice of mailing erroneous mortgage statements continues "to
the present."  ECF No. 1 ¶¶ 17-18.  Thus, res judicata does not
support dismissal of the claim in its entirety.[2]

Seterus also moves to dismiss this count on the ground that
plaintiff does not claim to have suffered any illness or bodily
harm caused by Seterus.  ECF No. 59-1 at 25.  To plead a claim
on which relief may be granted, however, it is sufficient to
allege that the claimant's emotional distress "was foreseeable
and severe enough to potentially cause illness or bodily harm."
Holtman v. Citifinancial Mortg. Co., No. CIV.A. 3:05-CV-1571,
2006 WL 1699589, at *6 (D. Conn. June 19, 2006); Witt v. Yale-
New Haven Hosp., 51 Conn. Supp. 155, 162, 977 A.2d 779, 784
(Super. Ct. 2008) (noting that "the primary focus" in an
emotional distress claim "is on the question of foreseeability
and not on the physical manifestation of the emotional injury").
Courts considering emotional distress claims in connection with
mortgage foreclosures have denied motions to dismiss.  See,
e.g., Tanasi v. CitiMortgage, Inc., 257 F. Supp. 3d 232, 274 (D.
Conn. 2017) (denying motion to dismiss plaintiff's negligent
infliction of emotional distress claim that led to "years of

---

[2] Again, however, to the extent the claim is based on allegations of
misconduct that preceded the entry of the judgment, it is barred.

18

duress" and "emotional trauma" resulting from defendant's efforts to service mortgage because plaintiff had adequately "alleged damages that could plausibly result from Defendants' negligence"); Drena v. Bank of Am., N.A., No. 3:15-CV-00176 (MPS), 2016 WL 730699, at *6 (D. Conn. Feb. 23, 2016) (denying same because it was foreseeable that defendant's actions "would be severely distressing to a mortgagor in financial straits striving to stay in his home" and noting that "courts in this district have held that a claim for negligent infliction of emotional distress can arise in relation to the service of a mortgage"); Holtman v. Citifinancial Mortg. Co., No. CIV.A. 3:05-CV-1571, 2006 WL 1699589, at *6 (D. Conn. June 19, 2006) (denying same where plaintiff alleged that defendant's actions attempting to collect on mortgage caused him "great emotional distress," id., ECF No. 1 at 12).  Plaintiff's allegations of emotional distress may prove to be unavailing, especially since the basis for his emotional distress claim is now confined to the defendant's mailing of incorrect mortgage statements after he prevailed in the foreclosure action.  However, I find that the allegations are at least marginally sufficient to survive the motion to dismiss.

Finally, Seterus argues that the economic loss doctrine bars recovery since "all of plaintiffs' claims emanate, arise out of, and are dependent on allegations as to the underlying

Note and Mortgage . . . ."  ECF No. 59-1 at 36.  The economic
loss doctrine "bars negligence claims that arise out of and are
dependent on breach of contract claims that result only in
economic loss."  Ulbrich v. Groth, 310 Conn. 375, 410, 78 A.3d
76, 100 (2013).  At this point, the only remaining claim under
this count, and the only remaining negligence claim in the
entire amended complaint, is for negligent infliction of
emotional distress related to the allegedly erroneous mortgage
statements sent by Seterus to plaintiff.  Since this claim is
not "dependent on" and does not "arise out of" a breach of
contract claim relating to the mortgage, but rather relates to
separate statutory violations in connection with Seterus's
attempts to collect debt remaining on the mortgage, the economic
loss doctrine does not apply.  See Pride Acquisitions, LLC v.
Osagie, No. 3:12-CV-639 JCH, 2014 WL 4843688, at *13 (D. Conn.
Sept. 29, 2014) (economic loss doctrine did not bar negligence
claim relating to defendant's conduct in collecting debt because
claim not predicated on breach of underlying contract but on
FCRA violations).  Moreover, plaintiff's claims are not purely
economic.  See Ruggerio v. Harleysville Preferred Ins. Co., No.
3:11CV760(AWT), 2014 WL 12749450, at *1 (D. Conn. Dec. 19, 2014)
(denying motion to dismiss on economic loss ground because "in
addition to her economic losses, the plaintiff is seeking to
recover for emotional distress").

<u>Count 30 – Intentional Infliction of Emotional Distress</u>

In count 30, plaintiff attempts to state a claim for intentional infliction of emotional distress simply by incorporating his earlier allegations of negligent infliction of emotional distress.  This is insufficient.  To plead a claim of intentional infliction of emotional distress, plaintiff must allege facts showing that (1) the defendant intended to inflict emotional distress or knew or should have known emotional distress would likely result from its conduct; (2) the conduct was extreme and outrageous; (3) the conduct was the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was severe.  <u>Tracy v. New Milford Pub. Sch.</u>, 101 Conn. App. 560, 568, 922 A.2d 280, 286 (2007); <u>see also</u> <u>Deutsche Bank Nat. Tr. Co. v. Ofili</u>, No. CV146022822, 2015 WL 4726836, at *21–22 (Conn. Super. Ct. July 2, 2015) (noting that the two claims are "separate causes of action with distinguishable elements and measures of damages" and granting motion to strike intentional infliction of emotional distress claim because it "mixes these claims with allegations of negligence").  Because plaintiff has failed to even address these elements, this count is dismissed.

<u>Counts 41 and 44 – Defamation and False Light</u>

Construed in light of plaintiff's reply brief, these counts attempt to state claims for relief on the basis of Seterus's statements to credit reporting agencies that he was delinquent on his mortgage payments.  <u>See</u> ECF No. 72 at 25 (Seterus "communicated 'serious delinquency' and more to the credit bureaus and in doing so, to the world and all creditors who looked at the Plaintiff Doody's credit report before extending credit. [sic] and that Mr. Doody was not making his mortgage payments when he was actually making the payments.").  According to plaintiff, "[t]hat constitute [sic] both Defamation and False Light."  <u>Id.</u>  Because claims relating to credit reporting are preempted by FCRA, these counts are dismissed.

<u>Count 48 – Trespass</u>

In count 48, plaintiff purports to sue for trespass but alleges facts that appear to relate instead to a defamation claim.  In his reply, plaintiff admits the error and moves for leave to amend.  Plaintiff proposes to amend the complaint by alleging facts that suggest the trespass occurred "[s]ometime in September 2017."  ECF No. 72 at 26.  A review of the case law shows that trespass counterclaims are not generally accepted in foreclosure actions.  <u>See</u> <u>Nationstar Mortg., LLC v. Lardie</u>, No. CV176024145S, 2018 WL 1936540, at *1 (Conn. Super. Ct. Apr. 6, 2018) (granting motion to strike defendants' trespass and other

counterclaims because they "do not pertain to the making, validity or enforcement of the note or mortgage"); U.S. Bank Nat'l Ass'n v. Sabia, No. CV166021018S, 2018 WL 2048545, at *1 (Conn. Super. Ct. Apr. 11, 2018) (same); Norwest Mortg., Inc. v. Clapper, No. CV990060598S, 2002 WL 172627, at *5 (Conn. Super. Ct. Jan. 7, 2002) (same and holding that defendant failed to show that trespass counterclaim and others "are in any way related to the allegations in the plaintiff's complaint"). Thus, res judicata would not bar the trespass claim from being raised now, nor would the claim be time-barred, since the statute of limitations on tort claims in Connecticut is three years, Conn. Gen. Stat. § 52-577, and the alleged trespass occurred in 2017.  Count 48 is dismissed, but because the claim could not have been raised in the earlier action and because "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead, Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991), the dismissal will be without prejudice.

   Counts 33 and 36 – Abuse of Process and Vexatious Litigation

   Count 36, alleging statutory vexatious litigation, is dismissed because there was probable cause to foreclose on the mortgage.  Count 33, alleging abuse of process, is dismissed on substantially similar grounds.  Because plaintiff failed to make seven months of mortgage payments, and because there was

probable cause to bring the foreclosure action, plaintiff cannot

plausibly allege that the foreclosure was not "used for the

purpose for which it [was] intended," as required under

Connecticut law to state a claim for abuse of process.  Mozzochi

v. Beck, 204 Conn. 490, 495, 529 A.2d 171 (1987).

IV.   Conclusion

Accordingly, Seterus's motion is granted in part and denied

in part.

So ordered this 1st day of April 2022.


                              /s/ RNC
                         _____
                            Robert N. Chatigny
                         United States District Judge


24